# IREL C. DENT, Respondent, v. SPRINGFIELD TRACTION COMPANY, Appellant.

**Springfield Court of Appeals, June 6, 1910.**

1. **CARRIERS OF PASSENGERS: Street Railways: Negligence: Personal Injuries: Sufficiency of Evidence.** In a suit by a passenger against a street car company, plaintiff alleged that as she was in the act of alighting from the street car the servants of defendant company negligently started the car with a sudden jerk, by reason of which she was thrown to the street and injured. Evidence is examined and held sufficient to entitle plaintiff to go to the jury.

2. **APPELLATE PRACTICE: Weighing Conflicting Evidence.** An appellate court cannot weigh the testimony of witnesses or reconcile their conflicting statements; neither will it interfere with the verdict of a jury which is supported by substantial evidence, although the preponderance of the evidence is against such finding.

3. **PRACTICE: Conduct of Counsel: Exceptions.** The remarks made by respondent's counsel in his opening statement are condemned as being probably prejudicial to defendant, but as no timely objections were made or exceptions saved by appellant, the matter cannot be reviewed on appeal.

4. **———: ———: ———.** Appellant complained of the remarks made by respondent's counsel in his closing argument, but as these remarks were not preserved in the bill of exceptions, and no exceptions were saved, they are not reviewable by the appellate court.

5. **———: Personal Injuries: Examination by Physician: Discretion of Trial Court.** The appointment of a physician to make an examination of plaintiff who claimed to have been injured while alighting from a street car was held in this case to be entirely within the discretion of the trial court.

6. **———: ———: ———: ———.** Where a physician is selected by the court, upon defendant's application, to make an examination of the injuries of plaintiff, and the defendant objected to the physician appointed, but gave no substantial reason or proof to show the impropriety of the selection made and abandoned its attempt to procure an examination; *held*, that there was nothing for the appellate court to review.

7. EVIDENCE: Testimony of Physician: Waiver of Privilege. A party to a suit may waive her right to object to the testimony of her physician on the ground of privilege. '

8. ————: Pleading: Personal Injuries: Medical Attention: Damages: Instructions. In an action for damages for personal injuries, the petition alleged the plaintiff had expended a certain sum for medicines and medical attention. *Held*, that it was improper under the pleading to admit evidence of the amount of liability plaintiff had incurred for these items, but as the instruction given on the measure of damages authorized an assessment of damages only for pain and suffering, the error in the admission of the evidence of the amount of plaintiff's liability for medical attention was harmless.

9. PRACTICE: New Trial: Newly Discovered Evidence. Under the showing as to newly discovered evidence in this case, the action of the trial court in overruling the motion for a new trial on that ground was not error.

10. PERSONAL INJURIES: Excessive Verdict. In a personal injury case where plaintiff in alighting from a street car fell to the street and sustained injuries to her right knee and hip, the evidence covering the extent of the injury is reviewed and the verdict for $5500 is held excessive, and that $3500 would be a fair compensation.

Appeal from Greene Circuit Court.—*Hon. Alfred Page,* Judge.

AFFIRMED (*upon remittitur*).

*Delaney & Delaney* for appellant.

(1) On the whole, the record fails to disclose evidence of probative force sufficient to sustain a verdict. Young v. Ruhwedel, 119 Mo. App. 244; Franklin v. Railroad, 188 Mo. 542; Bohl v. Mercantile Co., 114 Mo. App. 439; Morris v. Kansas City, 117 Mo. App. 298. (2) A verdict, unless supported by substantial evidence, should be set aside. Friesz v. Fallon, 24 Mo. App. 479; Steber v. Davis, 12 Mo. App. 573; Price v. Evans, 49 Mo. 396; Spohn v. Railroad, 87 Mo. 84; Walton v. Railroad, 49 Mo. App. 620; State v. Primm, 98 Mo. 386; State v. Young, 119 Mo. 525; Powell v. Rail-

road, 59 Mo. App. 335; Empey v. Cable Co., 45 Mo. App. 423. (3) The verdict is the result of passion and prejudice and is also excessive in damages as the result of such passion and prejudice in the light of the evidence, and these cases: Phippin v. Railroad, 196 Mo. 348; Stolze v. Transit Co., 188 Mo. 581; Reynolds v. Transit Co., 189 Mo. 408; Bragg v. Railroad, 192 Mo. 360; Furnish v. Railroad, 102 Mo. 438; Burdict v. Railroad, 123 Mo. 236; Nichols v. Plate Glass Co., 126 Mo. 68; Rodney v. Railroad, 127 Mo. 676; Hollenbeck v. Railroad, 141 Mo. 112; Markey v. Railroad, 185 Mo. 365

*Hamlin & Seawell* for respondent.

(1) "An appellate court will not interfere with the finding of the jury supported by any substantial evidence, although the preponderance of the evidence is greatly against such finding." Bond v. Railroad, 110 Mo. App. 131; Harrison v. Lakeman, 189 Mo. 581; Dowling v. Wheeler, 117 Mo. App. 169; McNulty v. Railroad, 203 Mo. 475; Hurley v. Railroad, 120 Mo. App. 262; Wood v. Railroad, 119 Mo. App. 78; Wayland v. Johnson, 130 Mo. App. 80; Peck v. Traction Co., 131 Mo. App. 134. (2) If appellant was so very anxious for the testimony of Dr. Rienhoff, it would have produced him in open court and then the question of respondent exercising her right of objecting on the ground of privilege would have been presented. This privilege could be waived. Fisher v. Transit Co., 198 Mo. 607; Green v. Railroad, 211 Mo. 34; Chlanda v. Transit Co., 112 S. W. (Mo.) 249. (3) The appointment of a physician to make an examination of a party is entirely within the discretion of the trial judge, and for a refusal no error is committed unless this discretion is manifestly abused. Sheppard v. Railroad, 85 Mo. 629; Hill v. Sedalia, 64 Mo. App. 503. (4) No error was committed by the court in overruling

the motion for a new trial upon the ground of newly discovered evidence. King v. Gibson, 206 Mo. 279; Nugent v. Armour, 208 Mo. 481; Boggs v. Lynch, 22 Mo. 563; Blake v. Insurance Co., 133 Mo. App. 18; Summers v. Insurance Co., 90 Mo. App. 691; Devoy v. Transit Co., 192 Mo. 197; Bell v. Railway, 148 Mo. 478. (5) Much larger verdicts for injuries not so severe and where the expectancy of life was not so great, the injured persons being much older than respondent, have been sustained. Westervelt v. Transit Co., 222 Mo. 325; Loftus v. Railroad, 220 Mo. 470; Phelps v. Zinc Co., 218 Mo. 572; Beave v. Railroad, 212 Mo. 358; Devay v. Transit Co., 192 Mo. 197; O'Gara v. Transit Co., 204 Mo. 724; Laston v. Transit Co., 192 Mo. 449; Chadwick v. Transit Co., 195 Mo. 517; Sotebier v. Transit Co., 203 Mo. 702; Peterson v. Railroad, 211 Mo. 498; Garand v. Coal Co., 207 Mo. 242; Dean v. Railroad, 199 Mo. 386; McCafferty .v. Railroad, 192 Mo. 144; Rapp v. Transit Co., 190 Mo. 144; Haxton v. Kansas City, 190 Mo. 53; Small v. Kansas City, 185 Mo. 291; Corum v. Railway, 129 Mo. App. 494; Latimer v. Railroad, 126 Mo. App. 70; Evers v. Wiggins, 127 Mo. App. 236; Kupke v. Transit Co., 122 Mo. App. 355; Goins v. City, 127 Mo. 116; Pauck v. Provision Co., 166 Mo. 639; Milledge v. City, 100 Mo. App. 490; Goldsmith v. Holland, 182 Mo. 597; Bolton v. Railroad, 172 Mo. 92; Luckel v. Century Co., 177 Mo. 608; Wood v. Railroad, 181 Mo. 433; O'Neil v. City, 178 Mo. 91; Hufford v. Railroad, 130 Mo. App. 638; Rattan v. Railroad, 120 Mo. App. 270; Gehart v. Railroad, 112 S. W. 12; Hollenback v. Railroad, 141 Mo. 112; Williams v. Railroad, 123 Mo. 586; Rodney v. Railroad, 127 Mo. 691; Brown v. Railroad, 99 Mo. 319.

NIXON, P. J.—This was an action for damages for personal injuries sustained by plaintiff by reason of the alleged negligence of the defendant's servants. The plaintiff alleged in her petition that she took passage

on one of defendant's street cars in the city of Springfield, Missouri, and became a passenger to be transported to the intersection of Pacific and Boonville streets in said city. That she gave the conductor notice of her desire to alight at that place and that the conductor stopped the car at the usual stopping place for the purpose of allowing plaintiff to alight, but that before she had a reasonable time to alight and while she was stepping from the car, the conductor, knowing that she had not alighted and was in the act of alighting, negligently and carelessly signaled the motorman to start the car, and that the said car was negligently and carelessly started with a sudden and violent jerk, by reason of which plaintiff was thrown to the street and greatly injured.

The answer of the defendant was a general denial.

The plaintiff obtained judgment for $5500, and the case is here on defendant's appeal.

I. It is assigned as error that on the whole case the record fails to disclose evidence of sufficient probative force to sustain the verdict.

At the trial, the plaintiff as a witness in her own behalf gave evidence tending to support the material allegations of her petition, and her physician testified as to the extent of her injuries. The defendant introduced substantial evidence (showing by a preponderance of all the evidence) that the charges of negligence in the petition were not true and that plaintiff's injuries resulted from her own act in stepping from the car before it had stopped to allow her to alight. Among defendant's witnesses were two or three who were entirely disinterested.

Under the well-established rules of appellate practice, this court cannot weigh the testimony of witnesses or reconcile their conflicting statements. Section 725, Revised Statutes 1899, provides: "The trial court may

145 App—5

award a new trial on any issue upon good cause shown; but no more than one new trial of the same issue shall be granted to any one party." It was within the reasonable discretion of the court, *nisi*, to have granted the appellant a new trial on account of the verdict not being in accordance with the weight of the evidence. We cannot weigh the evidence. The law provides us no balances for that purpose, but prohibits the appellate court from weighing the evidence in cases of this kind. To do so would overthrow the whole jury system and deprive the litigant of his constitutional rights. There being substantial evidence in this record to support the charges of negligence in plaintiff's petition, we must hold against the appellant on this assignment.

II. It is further assigned that the opening statement of counsel for plaintiff, coupled with the subsequent action of the court in refusing to give instructions prayed for by the appellant, constitutes reversible error.

The statement of counsel was to the effect that one Dr. Rienhoff would not be called as a witness because he was the physician for an employee of the appellant, he having attended plaintiff as a physician when she was first injured.

It was, perhaps, the privilege of plaintiff not to call her physician as a witness, but the remarks discrediting him beforehand may have been prejudicial to the defendant. Such a statement under the circumstances justified the application of appellant for the appointment of a physician by the court to make a physical examination as to the extent of plaintiff's injuries; especially may this be considered true because the defendant could not use Dr. Rienhoff as a witness, he being privileged, should the plaintiff object to his testimony. And it may be considered as being one thing to waive your own privilege and quite a different proposition to make a statement to the jury implying that

you are constrained to do so by reason of some act or conduct imputable to the opposite party. However, the unanswerable reply is that if the statement was improper, timely objection should have been made by the appellant, and, if overruled, exceptions saved. [Latimer v. Metropolitan Street Ry. Co., 126 Mo. App. 70, 103 S. W. 1102.]

III. It is contended by the appellant that the court erred in refusing to appoint a physician to make an examination on appellant's application.

The record discloses the fact to be that the petition in this case was filed on the 28th day of August, 1909, and the nature and extent of plaintiff's injuries were clearly set forth in said petition. No effort was made by the appellant, however, to have an examination made until the trial was begun. The excuse was that appellant was informed by respondent's attorneys that Dr. Rienhoff would not be called as a witness in her behalf; but nothing is disclosed in the record to show why the appellant was prevented from calling Dr. Rienhoff as its own witness. The mere supposition that the respondent would object to his testimony is not a sufficient excuse and the appellant had no right to assume that respondent would object to his testimony; and whether his testimony would have been material or would have been objected to was all a mere conjecture on the part of the appellant. Had the appellant desired the testimony of the physician, it could have produced him in court and the question of respondent objecting on the ground of privilege would then have been presented in the presence of the court and jury. This privilege she might have waived. [Elliott v. Kansas City, 198 Mo. 595, 607, 96 S. W. 1023; Green v. Terminal R. Assn., 211 Mo. 18, 109 S. W. 715; Chlanda v. St. L. T. Co., 213 Mo. 244, 112 S. W. 249.]

However, the court showed its willingness to have a physician appointed to make the examination and the

real difficulty arose as to what physician should be appointed. The appellant sought to name the physician, suggesting one of its own employees, and afterwards named another physician, the court refusing to appoint either of those named. Then, without any suggestion from either party, a certain Dr. Sherman of Springfield, a reputable physician and surgeon, was named by the court to make the examination. No objections to his qualifications were made by the appellant at any time and no bias or prejudice was claimed, the only objection being a mere statement of appellant's counsel that the personal relations between Dr. Sherman and himself were not pleasant. No evidence was offered to sustain this suggestion. This certainly was not a sufficient disqualification to prevent the physician from making a correct examination and properly discharging his professional duty. The appellant, not having succeeded in having a physician of its own choosing selected, abandoned its attempt to secure an examination. We think the objection to the action of the court is wholly unsubstantial. The appointment of a physician to make an examination of the injured party under the circumstances presented in this case was entirely within the discretion of the court, and for a refusal no error is shown unless that discretion was manifestly abused. [Shepard v. Mo. Pac. Ry. Co., 85 Mo. 629; Hill v. City of Sedalia, 64 Mo. App. 495, 503.] The fact remains, therefore, that the court of its own motion, so far as the record shows, having selected a competent and trustworthy physician after due consideration, if the appellant desired to preserve a tangible objection, it should have presented its reasons and evidence showing the impropriety of the appointment offered to be made by the court. Having seen fit to take the other course and abandon its attempt to procure an examination, there is nothing left for review by this court.

IV. It is further complained that the court admitted improper evidence as to the value of medicines and medical services.

The plaintiff was asked the following question: "Do you know anything about what your medical expenses have been?" She answered: "I think it is something like $250." By the Court: "Do you mean that you have paid that much? A. No, sir; I do not mean that I have paid it, but paid part of it and liable for the balance of it."

The objection was made that no recovery for such expenses could be had under the allegations of the petition. The petition contained this allegation as to plaintiff's damages: "That she has *expended* for medicine and medical attention on account of said injuries the sum of $250."

It will be seen that there was a material variance between the testimony and the allegation in the petition, the latter being that she had *expended* $250, and the proof showing that she had simply incurred the liability for that amount. This evidence would not support the allegation in the petition. [Nelson v. Metropolitan Street Ry. Co., 113 Mo. App. 659, 88 S. W. 781; Muth v. St. L. & M. R. R. Co., 87 Mo. App. 422.]

At the conclusion of the evidence, the appellant asked the following instruction: "The court instructs the jury that in assessing damages, if you find the issues for the plaintiff, you will make no allowances for money alleged to have been paid or obligations incurred for medicines and medical attention." That part of the instruction which directs that no allowance shall be made for money paid was improper, but the part which directed the jury to make no allowance for obligations incurred was entirely proper. But the court, in giving instructions for the plaintiff, limited the recovery of damages to such sum as would reasonably compensate plaintiff for her pain and suffering and gave no direction to the jury that they should allow any sum

whatever for medicines and medical attention, the instruction as to damages being as follows: "If you find the issues in favor of the plaintiff, you will assess her damages at such sum as will reasonably compensate her for her pain and suffering caused by the injury, if any." Under the instructions actually given to the jury, the improper admission of evidence as to medicines and medical services and the refusal of the court to give the instruction asked by appellant on that question was harmless error, not materially affecting the merits of the case.

V. Another assignment is that the trial court erred in overruling the motion for new trial on the specification of newly discovered evidence.

The affidavit of counsel on this question stated that the condition of plaintiff was not attributable to the injuries complained of, but to some other cause. Affidavits of the witnesses whose testimony was desired were filed showing that they were acquainted with the plaintiff and lived in the same neighborhood; that about two and one-half years ago, plaintiff complained of one of her lower limbs and said that she had a great deal of trouble with her knee; that plaintiff said several times that she was suffering from an affliction of her limb and that these complaints were made prior to the time when she was injured by the defendant. The evidence of these witnesses was discovered by the appellant soon after the trial and it was claimed that the reason why it was not discovered sooner was on account of the secretiveness of the witnesses prior to the trial and their willingness to testify afterwards. The affidavits, however, did not show that the witnesses did not disclose their knowledge of the plaintiff's physical condition until after the trial or for the reasons assigned by counsel. Aside from the affidavit of counsel there is nothing to show that they were not ready and willing to assist the appellant before the trial as well as afterwards.

The injuries claimed to have been received by respondent were made known to the appellant by her petition several months before the trial. The witnesses resided in the neighborhood of the respondent and could have been interviewed and their testimony ascertained and they could then have been compelled to appear as witnesses if her injuries were simulated.

In response to the affidavits filed by appellant, respondent filed numerous affidavits of witnesses corroborating her statements and contradicting the statements in the affidavits filed by appellant, together with evidence showing that the general reputation for truth and veracity of each of the newly discovered witnesses was bad.

Under this showing as to the newly discovered evidence, the action of the court in overruling the motion for a new trial was not error.

VI. Another ground in the motion for new trial was that the attorney for the respondent in his opening argument used inflammatory language and appealed to the prejudice and passion of the jury.

Speaking of a subpoena issued for the defendant and served by a deputy, counsel said: "Deputy for who, Gentlemen? The testimony shows you that he was a spotter for this corporation, the mouthpiece of the superintendent sitting there—and their methods of getting witnesses is to sneak out a blank subpoena with the clerk's seal on it and then for Delaney and Fankboner (the deputy) to run around through the alleys and in the dark and find out who will swear what they want and then for Delaney to write in the name—and their testimony always agrees, Gentlemen—liars who have talked to a smooth lawyer always agree as these men who are so sure that when they saw this plaintiff on the street that she was on her left knee. And that is not all, Gentlemen—you remember this witness of.mine, Appleby, who used to work for them and who has now

Dent v. Traction Co.

most likely a hope held out to him he can get his job back. . . . You see this big superintendent, Gallagher, sitting, here, and we seen him there every case this term—and he was not there because he was a witness, for he hasn't been called or subpoenaed—what is his interest, Gentlemen? To see if these boys whose jobs depend on his word, swear to what he and his lawyers want them to, Gentlemen, and nothing else—and to see that if they dare go back on him, they lose their job."

The attorney charged to have made these remarks filed his affidavit in which he denied having made the statements. The remarks that were made were not incorporated in the bill of exceptions as they should have been. No exceptions having been taken to the prejudicial remarks, they are not reviewable. The bill of exceptions is the sole repository of exceptions taken to the proceedings of the trial court and the appellate court cannot find them in any other place. The record not having been made up by the court showing what remarks were actually made and showing that objection was made and exceptions saved, the question is not before this court for review.

VII. It is also contended that the judgment in this case of $5500 is excessive.

The evidence of Dr. Kerr, who was sworn as a witness in behalf of plaintiff, was substantially as follows: "I was first called by the plaintiff some time in June, 1909, about a year after she was injured. I found her suffering from a severe pain in the right knee and hip; the knee was considerably swollen, perhaps a half larger than its natural size. I found several open places, one almost over the knee-cap and one under it, and found that she could not move her knee without severe pain. I think there has been a fracture of the patella, or what we call the knee-cap. Inflammatory conditions might follow that and result in loss of motion which I judge was about one-third of the motion that

was lost to that limb. I have been treating her since. The injured limb is smaller than the other, including the knee. It seems to be perished away; as a physician I consider that the injury was the cause of that limb perishing. The effect on the limb would be for the muscles to perish and she would lose the use of it; the condition of the knee I think is permanent; I think it will continue through life; those sores will probably get better, but that ankylosis condition, I think will remain; I am sure of that; that will affect the motion of her limb in all time to come. I examined her yesterday and found these conditions about the same. That condition would affect her walk and stepping over obstacles. The pain would probably give way later— it might and it might not. I rather think in time to come the pain will disappear."

He testified on cross-examination as follows: "During the period of two months between examinations she was taking my treatment; this included medicine and local applications, but I never performed an operation and gave her no opiates. For her rest I gave her hypodermics, but this was not daily. I saw her once in August and once in September. I don't know that there was a fracture of the patella or knee-cap, but I believe it was fractured; I could not tell, except the sores would indicate a fracture. There were no tubercular symptoms. I judge that there was a trace of poisonous conditions to some extent. When the inflammation went to the joints, this to some extent indicated a septic condition."

On re-direct examination he testified: "The trouble of the plaintiff may be produced by nervousness or loss of sleep; this is one cause; there are numerous things that might produce it. Loss of sleep or nervousness contribute to produce indigestion. It will not be necessary for an operation to remove the knee-cap; I think those open places, those sores, will get well in the future. She will be relieved of pain."

He was recalled for further cross-examination and stated: "By an ankylosis knee I mean a stiffening of the joint and consequent lack of motion."

Under all the evidence as to the extent of respondent's injuries, taking into consideration the fact that she is thirty-eight years of age, the nature of the injuries and the pain and consequent suffering, and giving full weight and force to the statements of her physician, his indecision as to whether there was a fracture of the knee-cap, and his conclusion that the sores would heal and that she would be relieved of pain, the showing as to her injuries renders it probable that they will be limited to some stiffening of the knee and consequently some lameness. Under this showing, the judgment for $5500 was excessive. Our conclusion is that there should be a remittitur of $2000 of said judgment, leaving a judgment of $3500 which will be a fair compensation. It is therefore ordered that if within thirty days from the date of filing this opinion, the respondent shall file with the clerk of this court a written remittitur of $2000 of the said judgment, the judgment will be affirmed; otherwise the judgment will be reversed and the cause remanded for a new trial. All concur.